UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RICHARD BELLIS,                                                          Docket No.:

                *Plaintiff,*

                                                  **COMPLAINT**

  -against-

THE NEW YORK CITY DEPARTMENT OF EDUCATION,    **PLAINTIFF DEMANDS A JURY TRIAL**

                *Defendant.*
------------------------------------------------------------------------X

Plaintiff Richard Bellis, as and for his Complaint, respectfully alleges, all upon information and belief, as follows:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C §1331, in that certain of the Plaintiff's claim arise under the laws of the United States, namely the Civil Rights Act of 1871, 42 U.S.C. §1983, regarding Defendant's violation of his rights under the Equal Protection clause of the 14th Amendment to the United States Constitution and the Civil Rights Act of 1866, 42 U.S.C. §1981.

2. Venue is proper under 42 U.S.C §2000e-5(f)(3) and 28 U.S.C §1391(b) because the Defendant resides in and does business within the Southern District of New York and Plaintiff performed his work within this District.

## IDENTITY OF PARTIES

3. At all relevant times mentioned herein, Plaintiff Richard Bellis ("Bellis") has been employed by Defendant the New York City Department of Education ("the DOE") for nearly thirty years, starting in 1991.

4. At all relevant times mentioned herein, the DOE was and is a New York City governmental agency responsible for the administration of New York City's public-school system, which is located in the City and State of New York.

## BACKGROUND RELEVANT TO BOTH CAUSES OF ACTION

5. Bellis commenced his employment with the DOE in 1991 as a teacher, in the Office of English Language Learners.

6. Over the next three decades, Bellis performed very well for the DOE and received positive feedback, promotions and significant career advancement, rising in rank from Teacher to Regional Senior Assessment Coordinator, and then to Citywide Executive Director of Policy and Compliance for the Division of English Language Learners and Student Support (DELLSS).

7. In July 2007, Bellis began working in what was then referred to as the Office of English Language Learners.

8. As a result of his positive performance, in or about September 2009, Bellis was asked by the Executive Director to become the Director of Compliance & Policy for the Office of English Language Learners.

9. In his role as Director, Bellis managed a staff of 17 and was responsible for ensuring that the DOE had the resources and team to train all school principals, teachers, district staff and central staff on policies for "English language learners" ("ELL"), as well as developing protocols, policies and systems for monitoring ELL compliance.

10. In or about September 2014, there was a leadership change in the Office of English Language Learners and Milady Baez ("Baez") was brought back from retirement and re-hired as the Deputy Chancellor of the office, at which time the office was renamed the Division of English Language Learners and Student Support ("DELLSS").

11. On or about the time that Baez began her new position, Bellis had obtained an opportunity to transfer to another office within the DOE's central headquarters, which Bellis considered to be a move that would advance his career.

12. Baez, however, strongly encouraged Bellis to stay in DELLSS, stating that Bellis was "difficult to replace", he was "very important" to the office and that Baez would not release him until she found his replacement, which may take a long time.

13. Bellis agreed to remain in his position and, in recognition of the important work he was doing for the Department, Bellis received a promotion to Senior Director of Compliance & Policy.

14. Because of his efforts, during the fall of 2017, Bellis asked for and was again promoted, this time to the role of Executive Director of Compliance and Policy, which took effect in May 2018.

15. In April 2018, Richard Carranza ("Carranza") became the Chancellor of the DOE.

16. Bellis observed that Carranza set a mandate that Caucasian senior leaders be replaced by persons of color, regardless of the quality of work being of the Caucasian employee and even regardless of whether the candidates of color had lesser qualifications.

17. In April 2018, Bellis attended a meeting with several other DELLSS staff members and several principals, at which time Baez crassly stated to everyone about her recent visit to Stuyvesant High School, "I walked into Stuyvesant HS and I thought I was in Chinatown!"

18. Bellis was shocked and appalled by Baez's statement, which was particularly hurtful to Bellis because his wife is of Chinese national origin.

19. Soon thereafter, Bellis learned that Baez's offensive remark was reported to the DOE's Office of Equal Opportunity, and he was contacted by the DOE's Office of Equal Opportunity ("OEO") for a mandatory interview.

20. During his interview on June 21, 2018, Bellis corroborated the complaint made against Baez.

21. At the end of June 2018, Bellis learned that Baez was terminated.

22. Within days, however, the DOE retracted its termination of Baez and she continued to remain employed by the DOE.

23. Bellis' work environment changed drastically after he corroborated the complaint about Baez, which included Bellis being told that he had a "black cloud" hanging over him and was going to be "blacklisted."

24. Bellis also learned that Baez was speaking negatively about him to senior members of the DOE with whom she had close relationships and to whom she had access, including Chancellor Carranza, which was devastating to Bellis because he always took pride in the excellent reputation he worked hard to achieve.

25. Additionally, Bellis believed that Baez used her close relationships and friendships with as well as access to very senior members of the DOE to influence the newly appointed Chief Academic Officer, Linda Chen ("Chen"), who took adverse action against Bellis, which included but was not limited to:

- Falsely stating to a group of English Language Learner Administrators and Directors from around the City that "compliance" was an issue, which was an area that Bellis oversaw;

- Prohibiting Bellis, and only Bellis, from presenting at the prestigious Council of Great City Schools (CGCS), claiming

- that the Department was still under a "corrective action plan" from New York State, which was not true;

- Degrading Bellis by informing him that he could not present at CGCS *after* she notified the Council, so that he was the last to know;

- Publicly preventing Bellis' presentation at a high-level meeting for superintendents and senior staff, even after she approved the presentation and while all the other presenters were permitted to give their full presentations;

- Badmouthing Bellis, saying that the data he provided was "wrong," when it was not, which is confirmed by the fact that (1) Bellis' direct supervisor announced at a meeting that the data was not wrong, and (2) data and data resources he created are still being used and relied upon on at the DOE;

- Treating Bellis as though he was a poor performer when he was not, as confirmed not only by the quality of the work he performed but the long-standing and continuing praise he received.

These are only some examples of the manner in which Bellis was punished for exposing race discrimination, all of which would likely and reasonably deter an individual from engaging in protected activity.

26. In November 2018, Bellis was advised that DELLSS would be going through a restructuring and that the new organization would be called the Division of Multilingual Learners ("DML").

27. Bellis was advised that he would have to "reapply" for his former position, even though he had held that position for more than ten years and was recently promoted from Senior Director to Executive Director only seven (7) months earlier.

28. At the time of his reapplication, Bellis held the highest principal satisfaction ratings in DELLSS, and ELL compliance was at its highest, all of which confirmed Bellis' success.

29. Remarkably, Bellis was not rehired for his position and the DOE claimed he was "unqualified" for it, a shameful and appalling claim, given his years of service and demonstrated success in that position.

30. Further demonstrating the baselessness of the DOE's claim that Bellis was "unqualified" for his position is the fact that Bellis had created and implemented the resources, protocols, systems, and policies that remain in effect and which DML uses to this date.

31. In fact, a couple of weeks after Bellis left, he was called by DML to return to help transfer the work because "the field wants to continue your work."

32. Instead, Bellis' position was awarded to a less qualified individual, who was a person of color.

33. The decision to reject Bellis for his former position was a discriminatory decision based on his race that was in furtherance of the DOE's policy of promoting people of color to senior leadership roles, regardless of the quality of the work performed by the Caucasian employee being replaced while at the same time demoting high performing, long-standing Caucasian employees.

34. Carranza's stated goal was to have senior DOE officials represent the student population of the DOE, yet this misguided effort to bring integration into the DOE actually served to discriminate against many productive, successful and dedicated employees because of their race, regardless of their actual abilities or qualifications.

35. On January 17, 2019, Bellis was told that after 11½ years of successful, evidence-driven and transformative work in his role, he would be demoted and assigned the role of "Coach," which is one of the lowest levels of administrative work in the field of English language learners.

36. Bellis was also told that he would be removed from DOE headquarters at Tweed Courthouse and relocated to the Queens North Borough Office, which was a far less desirable work location.

37. In furtherance of Carranza's race-based discriminatory policies, Bellis observed that when persons of color who were either under investigation or in the process of being terminated made complaints about their circumstances, positions within the DOE were secured for them and/or accommodations made for them such as with Baez, a Hispanic female, who was actually terminated in June 2018, but after she complained she was permitted to retain a position so that she could return to retirement after completing 5 years in order to increase her pension for the rest of her life—effectively rewarding her for racist comments.

38. Since Bellis has been severely sidelined, marginalized, and demoted to the position of "Coach," he has applied for many jobs for which he was qualified pursuant to the job descriptions, but Bellis has been overlooked.

39. In fact, one of the positions Bellis applied for, Borough Assessment Implementation Director, was a position he held from 2005-2007, and although he was advised that his interviews and application were very good, the hiring manager "wanted to hire someone of color" and, in the summer of 2019, that is what occurred.

40. As a result of the DOE's discrimination and retaliation, Bellis has suffered financial loss and emotional distress, among other damages.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF
BELLIS AGAINST THE DOE FOR RACE DISCRIMINATION IN
VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983**

41. Bellis repeats, realleges and incorporates in full paragraphs 1 through 40 of this Complaint, as though fully set forth at length herein.

42. At the time Bellis was subjected to the discriminatory conduct described herein, he was in a protected class because of his race, ancestry or ethnic characteristics.

43. Throughout the time of his employment with the DOE, Bellis was fully qualified for his position and was in a position to continue working in that capacity for the remainder of his career.

44. By the acts and practices set forth herein, the DOE discriminated against Bellis in the terms and conditions of his employment on the basis of his race, ancestry or ethnic characteristics.

45. The DOE took adverse employment action against Bellis because of his race, ancestry or ethnic characteristics by refusing to genuinely consider him for the same or similar position following the reorganization of his Department and severely demoting him to a "Coach" position in Queens, while people of color with lesser qualifications are relying on and using the work that he created and implemented, all of which gives rise to a very real inference of discrimination.

46. The DOE's unlawful actions against Bellis were performed under color of law pursuant to a race-based policy and/or custom that Chancellor Carranza initiated, which represented the DOE's official policy, and were undertaken with malice or reckless disregard for Bellis' rights.

47. The aforementioned acts of the DOE constitute unlawful discrimination on the basis of race against Bellis in violation of his constitutional right to Equal Protection under the 14th Amendment of the United States Constitution, which provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws.

48. The aforementioned acts of the DOE constitute unlawful discrimination on the basis of race against Bellis in violation of the Civil Rights Act of 1866, 42 U.S.C. §1981 ("§1981"), which provides, inter alia, that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

49. Bellis seeks redress for the DOE's violations of his rights pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 ("§1983"), which provides, inter alia, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

50. As a direct and proximate result of the DOE's violation of §1983, the DOE is liable to Bellis for damages, in an amount to be determined at trial, as well as reasonable attorney's fees, pre-judgment interest and costs.

51. Bellis, therefore, seeks compensatory damages in this First Cause of Action, including, among other things, for loss of earnings, loss of earning capacity and for the emotional harm inflicted upon him, in an award to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

**AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF
BELLIS AGAINST THE DOE FOR RETALIATION IN VIOLATION
OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. §1983**

52. Bellis repeats, realleges and incorporates in full paragraphs 1 through 51 of this Complaint, as though fully set forth at length herein.

53. In June 2018, Bellis engaged in a protected activity under federal law, including but not limited to §1981, when he reported the racist and discriminatory conduct of Milady Baez, as more fully described herein.

54. As a proximate result of Bellis engaging in protected activity, Bellis suffered adverse employment action that was causally connected to his complaint, which included being forced to work in a hostile environment where he was bad-mouthed, degraded, falsely accused of poor performance, among other things.

55. The DOE's retaliatory actions against Bellis were performed under color of law pursuant to a policy and/or custom and were undertaken with malice or reckless disregard for Bellis' rights, and deprived Bellis of his Constitutional right to Equal Protection under the law.

56. The DOE's unlawful conduct has adversely affected Bellis' career, his emotional well-being, the quality of his life and Bellis believes that the injuries inflicted upon him, which were a direct result of the occurrences complained of herein, have and will continue to cause Bellis damage.

57. As a direct and proximate result of the DOE's violation of Bellis' rights, the DOE is liable to Bellis pursuant to §1983 for damages in an amount to be determined at trial, as well as reasonable attorney's fees, pre-judgment interest and costs.

58. Bellis, therefore, seeks compensatory damages in this Second Cause of Action, including, among other things, for loss of earnings and loss of earning capacity and for the

emotional harm inflicted upon him, in an award to be determined at a trial of this matter, as well as reasonable attorney's fees, the costs of this action and pre-judgment interest.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff Richard Bellis demands judgment against Defendant the New York City Department of Education on the First and Second Causes of Action for compensatory damages in an amount to be determined at trial, as well as costs, pre-judgment interest and attorney's fees as permitted under the law, and for such other relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By:_____
DAVIDA S. PERRY
BRIAN HELLER
3 Park Avenue, Suite 2700
New York, NY 10016
(212) 889-6565
