UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                  :

RICHARD BELLIS,                     :

                       :

               Plaintiff,       :

                       :         21-CV-3282 (JMF)

      -v-                 :

                       :       <u>OPINION AND ORDER</u>

NEW YORK CITY DEPARTMENT OF EDUCATION,  :

                       :

              Defendant.     :

                       :
-----------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       Plaintiff Richard Bellis, a white man who worked for the New York City Department of Education ("DOE") for over three decades, alleges in this lawsuit that he was the victim of a DOE policy, implemented by and at the behest of former Mayor Bill de Blasio and his appointed DOE Chancellor, that discriminated on the basis of race in staffing. To prevail on his sole remaining claim of municipal liability, Bellis must show, first, that he himself was discriminated against on the basis of race and, second, that the mistreatment was attributable to the City. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). The DOE now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment, arguing that Bellis cannot make either showing. *See* ECF No. 66; *see also* ECF No. 69 ("Def.'s Mem."). For the reasons the follow, the Court agrees. Specifically, on the record before the Court, no reasonable jury could find that Bellis was discriminated against on the basis of race; and assuming without deciding that there was a DOE policy of discriminating on the basis of race in staffing, no reasonable jury could find that Bellis's treatment was caused by that policy. Accordingly, the DOE's motion for summary judgment must be and is GRANTED.

**BELLIS'S SUMMARY JUDGMENT SUBMISSIONS**

Before turning to the relevant facts and the DOE's motion, the Court must address a preliminary matter: Bellis's failure to comply with Local Civil Rule 56.1. That Rule requires that, "[u]pon any motion for summary judgment pursuant to Rule 56 . . . , there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." Local Civ. R. 56.1(a). A memorandum opposing summary judgment must, in turn, be accompanied by a corresponding statement "responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." Local Civ. R. 56.1(b). Significantly, "[t]he Rule requires more than a rote recitation of facts." *Emanuel v. Griffin*, No. 13-CV-1806 (JMF), 2015 WL 1379007, at *1 (S.D.N.Y. Mar. 25, 2015). Indeed, "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d); *see, e.g.*, *Goldstick v. The Hartford, Inc.*, No. 00-CV-8577 (LAK), 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) ("If the non-movant asserts that a fact claimed by the movant to be undisputed is actually in dispute, the non-movant *must* cite evidence on the record to support its contention."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (stating that the party opposing a properly brought motion for summary judgment bears the burden of going beyond the pleadings, and "designat[ing] 'specific facts showing that there is a genuine issue for trial'" (quoting Fed. R. Civ. P. 56(e))).

In compliance with the Rule, the DOE filed a Rule 56.1 Statement, *see* ECF No. 68 ("DOE's 56.1 Statement"), and Bellis filed a Counterstatement, *see* ECF No. 77 ("Pl.'s 56.1 Response"), but, as the DOE points out in its reply, *see* ECF No. 83 ("Def.'s Reply"), at 1-2, Bellis's Counterstatement is deficient in several respects.  First, he contests many paragraphs in the DOE's Rule 56.1 Statement on the sole ground they are based on "self-serving" deposition testimony and fails to cite any evidence to support his vague argument that they "cannot reasonably be considered undisputed."  *See, e.g.*, Pl.'s 56.1 Response ¶¶ 14-15, 19, 30-31, 41-42, 47-48.  "Responses of this nature, which do not point to any evidence in the record that may create a genuine issue of material fact, do not function as denials, and will be deemed admissions of the stated fact."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 458 n.1 (S.D.N.Y. 2011).  More specifically, Bellis's "assertion that . . . 'self-serving' deposition testimony is not competent evidence to establish a fact for purposes of a summary judgment motion is plainly wrong.  Indeed, a [party] . . . can secure summary judgment in his favor if his deposition testimony [supports summary judgment] and is unrebutted by other evidence." *Maher v. City of New York*, No. 9-CV-2679 (ENV) (JO) 2011 WL 7025807, at *5 n.6 (E.D.N.Y. Jan. 10, 2011), *report and recommendation adopted*, 2012 WL 113559 (ED.N.Y. Jan. 13, 2012); *see, e.g.*, *Grosso v. Town of Clakstown*, No. 94-CV-7722 (JGK), 1998 WL 566814, at *11 (S.D.N.Y. Sept. 3, 1998) (relying on witness testimony "that there were no guidelines established with respect to" the alleged municipal policy or custom and that "he acted on a 'case-by-case basis,'" and the absence of contrary evidence, to dismiss a *Monell* claim).

Second, Bellis disputes several of the DOE's proffered facts on the ground that he "does not have personal knowledge" of the issues.  *E.g.*, Pl.'s 56.1 Response ¶¶ 5, 7, 9, 17, 45.  This

too is improper.[1]  "Parties are . . . prohibited from attempting to raise a material issue of fact by denying statements which the moving party contends are undisputed for lack of 'knowledge and information' because discovery allows the party opposing summary judgment to obtain the facts necessary to determine whether it must admit or deny them."  *Stepheny v. Brooklyn Hebrew Sch. for Special Child.*, 356 F. Supp. 2d 248, 255 n.4 (E.D.N.Y. 2005); *see Herman v. Town of Cortlandt, Inc.*, No. 18-CV-2440 (CS), 2023 WL 6795373, at *1 n.2 (S.D.N.Y. Oct. 13, 2023) (finding the non-movant plaintiff's Rule 56.1 response "deficient" because it "improperly dispute[d] one of Defendant's asserted facts by stating that he 'has no knowledge of the truth or falsity' of the asserted fact at issue" (citing *Scarpinato v. 1770 Inn, LLC*, No. 13-CV-955, 2015 WL 4751656, at *2 n.3 (E.D.N.Y. Aug. 11, 2015)); *Knox v. Cnty. of Putnam*, No. 10-CV-1671 (ER), 2012 WL 4462011, at *1 n.3 (S.D.N.Y. Sept. 27, 2012).  Bellis is, in essence, "alleg[ing] that [various witnesses'] testimony was false or perjurious without citing to any evidence to contradict their testimony."  *Watson v. Grady*, No. 09-CV-3055 (NSR), 2015 WL 2168189, at *1 n.2 (S.D.N.Y. May 7, 2015).

Third, in several instances, Bellis's response "improperly interjects arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts."  *Risco v. McHugh,* 868 F. Supp. 2d 75, 86 n.2 (S.D.N.Y. 2012).  More specifically, Bellis includes unrelated or unsupported arguments that are inappropriate in a Rule 56.1 response, either disputing a fact with no competent evidence to controvert it or acknowledging a fact as undisputed but layering unsupported narrative on top of that acknowledgment.  *See, e.g.*,

---

[1]       Nor can press reports substitute for Bellis's "personal knowledge," *see, e.g.*, Pl.'s 56.1 Response ¶ 5, as such reports are rank hearsay and may not be considered, *see, e.g.*, *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (holding that a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment").

Pl.'s 56.1 Response ¶¶ 27-28 ("It is undisputed that Carranza did not publicly announce his discriminatory intent."); *id.* ¶ 13 ("It is undisputed that the only candidates that were presented to de Blasio were ones that Ramirez and Carranza knew would be acceptable and fit with his racial criteria, so that de Blasio was not required to 'deny' any of the choices presented to him."); *see also, e.g.*, *id.* ¶¶ 23, 25, 29, 46, 50, 52, 57, 59, 62, 64. Courts can and do "ignore all portions of [a] Rule 56.1 Statement that contain [such] 'improper legal argument and unsupported assertions.'" *Emanuel*, 2015 WL 1379007, at *2 (quoting *Chenette v. Kenneth Cole Prods., Inc.*, No. 05-CV-4849 (DLC), 2008 WL 3176088, at *7 n.8 (S.D.N.Y. Aug. 6, 2008)); *see, e.g.*, *Stridiron v. Newburgh Enlarged City Sch. Dist.*, No. 20-CV-6823 (CS), 2023 WL 5586680, at *1 n.1 (S.D.N.Y. Aug. 29, 2023) ("Plaintiffs' response to Defendants' 56.1 Statement contains several purported denials that do not actually deny or refute the specific facts asserted by Defendants, but instead quibble with Defendants' phraseology or speak past Defendants' asserted facts without specifically controverting them.").

Finally, at times, Bellis cites only to portions of his own declaration, ECF No. 75 ("Bellis Decl."), submitted in connection with his opposition to the DOE's motion, to dispute the DOE's assertions. *See, e.g.*, Pl.'s 56.1 Response ¶¶ 57, 62; *see also id.* ¶¶ 40, 48, 49. But it is well established that "[a] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)); *accord Mason Tenders Dist. Council Welfare Fund v. LJC Dismantling Corp.*, 400 F. Supp. 3d 7, 15 (S.D.N.Y. 2019) ("Self-serving, conclusory affidavits, standing alone, are insufficient to create a triable issue of fact and defeat a motion for summary judgment." (quoting *Aersale Inc. v. Ibrahim*, No.

13-CV-713 (KBF), 2013 WL 5366384, at *3 (S.D.N.Y. Sept. 25, 2013)).  Put differently, "factual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes*, 84 F.3d at 619.  Thus, "statements in an affidavit filed in response to a summary judgment motion [do] not create material factual disputes where none existed without such affidavit."  *Id.*  Additionally, affidavits submitted in support of, or opposition to, summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show "that the affiant is competent to testify to the matters stated therein."  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (quoting Fed. R. Civ. P. 56(e)).  Some of the paragraphs in Bellis's declaration fall short of those requirements.  *See, e.g.*, Bellis Decl. ¶ 80 (declaring that a position was filled by a particular person without explaining the basis for knowledge of that fact).  Accordingly, the Court will consider Bellis's declaration only insofar as it is based on his personal knowledge and is consistent with other admissible evidence in the record.

For all of these reasons, the Court does, as the DOE requests, *see* Def.'s Reply 2, deem admitted the facts set forth in Paragraphs 14-15, 19, 41-42, and 47 of the DOE's Rule 56.1 Statement, as well as the facts set forth in Paragraphs 5, 7, 9, 13, 17, 23, 25, 27-28, 30-31, 45, 46, 57, 59, 62, and 64.  *See Jackson v. Fed. Exp.,* 766 F.3d 189, 194 (2d Cir. 2014); *Blackmon v. UNITE!,* No. 03-CV-9214 (GWG), 2005 WL 2038482, at *2 (S.D.N.Y. Aug. 25, 2005) (deeming admitted statements not supported by citations to competent evidence); *see also Guarino v. St. John Fisher Coll.,* 553 F. Supp. 2d 252, 254 (W.D.N.Y. 2008) (deeming admitted facts to which the plaintiff responded with legal arguments rather than competent evidence), *aff'd,* 321 F. App'x 55 (2d Cir. 2009).  The Court will also disregard improper legal arguments and conclusory assertions.  There are other portions of Bellis's response that arguably should be

disregarded, but the Court does, as it must, "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).  In the same spirit, where Bellis "provide[s] at least *some* citation in support of [his] statements," *see, e.g.*, Pl.'s 56.1 Response ¶ 11, "the Court . . . will undertake its own review of the record referenced by Plaintiff[] in an effort to determine whether that evidence is sufficient to raise a genuine question of material fact," *Emanuel*, 2015 WL 1379007, at *2.

## FACTS

With that background in mind, the following facts are, unless otherwise noted, drawn from the undisputed material facts in the record or described in the light most favorable to Bellis. *See, e.g.*, *Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Bill de Blasio began his tenure as Mayor of New York City on January 1, 2014.  DOE's 56.1 Statement ¶ 1.  The first DOE Chancellor appointed by de Blasio, Carmen Fariña, announced that she was retiring after de Blasio was re-elected Mayor in 2017.  *Id.* ¶¶ 2, 4.  De Blasio initially selected Alberto Carvalho, a white man of Portuguese descent, to replace Fariña, but Carvalho declined the offer; de Blasio then appointed Richard Carranza, who is Hispanic.  *Id.* ¶¶ 5-8; *see* ECF No. 76-29 ("Carranza Depo."), at 23-24.[2]  Carranza began working as DOE Chancellor on April 2, 2018.  DOE's 56.1 Statement ¶ 18.  De Blasio never discussed DOE staffing decisions when interviewing Carranza prior to his appointment, did not suggest or recommend any person to join Carranza's cabinet, and never denied any of Carranza's staffing decisions.  *Id.* ¶¶ 9, 11, 13.  In or about May or June 2018, Carranza appointed Edie Sharp, a

---

[2]    For consistency, all citations to deposition transcripts that are submitted in whole or in part by both parties are to the versions submitted by Bellis, which are attached to ECF No. 76.

white woman, as his Chief of Staff and Karin Goldmark, also a white woman, as Deputy

Chancellor for School Planning and Development.  *Id.* ¶¶ 22-25.  On June 27, 2018, Carranza

announced a restructuring of the DOE.  *Id.* ¶ 26.  At no point did he state or reference a policy or

practice of making employment decisions based on race.  *Id.* ¶¶ 27-28.

Bellis, who is a white man, began working for the DOE as a teacher in 1991 and was

promoted numerous times during his tenure.  *Id.* ¶¶ 33-34.  In the fall of 2017, he was promoted

to Senior Director of Compliance & Policy in the Division of English Language Learners and

Student Support ("DELLSS").  *Id.* ¶ 35.  In November 2018, Carranza and Linda Chen — the

then-new Chief Academic Officer of the DOE, who was responsible for overseeing DELLSS —

announced that DELLSS was going to be restructured and renamed the Division of Multilingual

Learners ("DML") and that DELLSS employees would have to reapply for their roles in the new

DML organization.  *Id.* ¶¶ 36-38.  Chen selected Mirza Sanchez-Medina to serve as Deputy

Chief Academic Officer starting in January 2019; Sanchez-Medina was tasked with making

staffing decisions within the DML.  *Id.* ¶¶ 39-40.

Bellis applied for two positions within the newly restructured DML, one of which was

equivalent to the position he previously held.  *Id.* ¶ 43.  He had separate telephone interviews for

both positions and one in-person interview for both positions, the latter of which was conducted

by Sanchez-Medina and a Human Resources staff employee.  *Id.* ¶¶ 44-45.  Bellis was not

selected for either position.  Sanchez-Medina selected Brenda Garcia, who is Hispanic, for the

role that was equivalent to Bellis's previous role and selected Rachel Hoff, who is white, for the

other role.  *Id.* ¶¶ 46, 51.  Sanchez-Medina testified that she believed Garcia "was a stronger

candidate for that position" than Bellis given Garcia's "broader perspective of instruction, field

practice and policy"; that Garcia "would be able to see the work not just from a data perspective

but [also] how that data lands . . . and be able to look at how do we learn from different

systems"; and that Garcia's previous role in the Newark public school system was "like the title

that I hold now as chief of the Division of Multilingual Learners." ECF No. 76-32 ("Sanchez-

Medina Depo."), at 77-78, 81-82, 85; *see also* DOE's 56.1 Statement ¶ 47. She testified that

Hoff was more qualified than Bellis because "[s]he had worked on Students with Interrupted

Formal Education work, policy, instructional work, and provided professional learning" and

"[s]he had worked in providing professional learning for English as a New Language." Sanchez-

Medina Depo. 90-91; *see also* DOE's 56.1 Statement ¶ 52.

On January 23, 2019, the DOE assigned Bellis to work as a coach in Queens North

Borough Center, a reassignment that did not affect his salary of $161,351.00, seniority, benefits,

or leave balances. *Id.* ¶¶ 53-56. Four other DELLSS employees — none white — were also

denied positions within the DML, *id.* ¶ 57, although Bellis maintains that they were reassigned to

more comparable roles, Pl.'s 56.1 Response ¶ 57. Bellis later applied for other positions within

the DOE and was interviewed for a Borough Assessment Implementation Director ("BAID")

position and a position in "EduStat." DOE's 56.1 Statement ¶¶ 58-59; *see* ECF No. 76-25

("Bellis Depo."), at 146, 150. Multiple interviewers scored the ten candidates for the BAID

position, including Bellis, in twelve different categories. DOE's 56.1 Statement ¶ 60.[3] Bellis's

---

[3]     Bellis appears to challenge the DOE's Exhibit K, the BAID Hiring Rubric Spreadsheet, on the ground that "the DOE has failed to authenticate the exhibit." Pl.'s 56.1 Response ¶¶ 60-61; *see* ECF No. 67-11. "Rule 901 requires a party offering a particular document only to 'produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" *Dale v. L'Oreal USA, Inc.*, 22-CV-427 (HG), 2023 WL 3984345, at *3 (E.D.N.Y. June 13, 2023) (quoting Fed. R. Evid. 901(a)). The bar for authentication, however, "is not particularly high." *Lara v. Port Auth. of N.Y. & N.J.*, No. 20-CV-10383 (JPC), 2023 WL 2185853, at *3 (S.D.N.Y. Feb. 23, 2023) (quoting *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007)). The DOE clears that low bar because the BAID Hiring Rubric Spreadsheet is authenticated by an affidavit from DOE's counsel, *see* ECF No. 67, and corroborated by other evidence, *see* ECF No. 67-12. Moreover, Bellis has not provided any reason to doubt its authenticity and, indeed, has

total score was second to lowest. *Id.* ¶ 61. The candidate who scored the highest, Laura Dalla

Betta — who is white — was appointed to the BAID position. *Id.* ¶¶ 62-63. Bellis does not

dispute this, but contends that a BAID position for another borough was filled by an Asian man

and that Matt Miller — a DOE employee in the "Assessment Office" — told him that regardless

of how well his interviews went, he would not be hired as a BAID because the DOE was looking

for an African-American or Asian candidate to fill the role. Pl.'s 56.1 Response ¶ 62. According

to Bellis, the EduStat position for which he interviewed "ultimately went to Shannon Smith."

Bellis Decl. ¶ 80. He asserts that Smith is African American, *id.* ¶ 80, although the exhibit he

cites as evidence of that is hearsay and, in any event, indicates only that a "Shannon Smith" self-

identified as Black or African American, not that that person was hired for the EduStat role, *see*

ECF No. 67-13.

On August 16, 2022, Bellis retired from and left the DOE. DOE's 56.1 Statement ¶ 64.

## LEGAL STANDARDS

Summary judgment is appropriate where the admissible evidence and pleadings

demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir

2012) (per curiam). Such a dispute qualifies as genuine "if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986); *accord Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008). The moving

party bears the initial burden of demonstrating the absence of a genuine issue of material fact.

*See Celotex*, 477 U.S. at 325. "In moving for summary judgment against a party who will bear

---

himself relied on other exhibits authenticated only through the DOE's counsel's affidavit. *See, e.g.*, Bellis Decl. ¶ 80 (citing ECF No. 67-13).

the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *accord PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). Critically, however, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford*, 391 F.3d at 83.

To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted). Affidavits submitted in support of, or opposition to, summary judgment must be based on "personal knowledge," must "set out facts that would be admissible in evidence," and must "show that the affiant or declarant is competent to testify on the matters states." *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)). Notably, the Second Circuit has cautioned that courts should be "especially chary in handing out summary judgment in discrimination cases," as the intent of the employer is often disputed." *Jamilik v. Yale Univ.*, 362 F. App'x 148, 149 (2d Cir. 2009) (summary order) (internal quotation marks omitted). Nevertheless, it is "beyond cavil that summary judgment may be appropriate

even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).  Indeed, just as plaintiffs in other types of cases, "an employment discrimination plaintiff faced with a properly supported summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts. She must come forth with evidence sufficient to allow a reasonable jury to find in her favor." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (cleaned up).  That is, a "plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Weinstock v. Colum. Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (cleaned up).

## DISCUSSION

Bellis's sole remaining claim, brought pursuant to 42 U.S.C. § 1983, is for municipal liability for discrimination on the basis of race.  *See* ECF No. 21 ("Compl."), ¶¶ 83-93; *see also* ECF No. 64, at 3 (withdrawing Bellis's only other claim, for retaliation).  To hold a municipality (or municipal entity, such as the DOE) "liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) (internal quotation marks omitted).  In order to prevail, therefore, Bellis must first prove that there was "an underlying constitutional violation." *Lanning v. City of Glens Falls*, 908 F.3d 19, 30 (2d Cir. 2018); *accord Lenzo v. City of New York*, No. 21-CV-306 (JMF), 2022 WL 656831, at *1 (S.D.N.Y. Mar. 4, 2022) (citing cases).  If he does, however, he *also* has to prove that a policy or custom of the DOE was the "cause[]," *Connick v. Thompson*, 563 U.S. 51, 60 (2011), or "'moving force' behind [his] alleged

injury," *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Roe*, 542 F.3d at 37).

Bellis's claim fails at both steps.

## A.  Underlying Constitutional Violation

The Court begins with the question of whether Bellis can prove an underlying

constitutional violation — namely, that he was subject to discrimination on the basis of his race.

Discrimination claims brought under Section 1983 are evaluated under the three-step burden-

shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*See, e.g.*, *Annis v. Cnty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).  First, the plaintiff

bears the burden of showing a *prima facie* case of discrimination.  In the employment context,

that means showing that: (1) he was a member of a protected class; (2) he was competent to

perform the job in question or was performing the duties satisfactorily; (3) he suffered a

materially adverse employment action; and (4) the action occurred under circumstances that give

rise to an inference of discrimination.  *See, e.g.*, *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir.

2010) (per curiam).  If the plaintiff meets this initial burden, the burden then shifts to the

defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse action.

*McDonnell Douglas*, 411 U.S. at 802.  If the defendant does so, the burden then shifts back to the

plaintiff to show "pretext."  *Id.* at 804-05.  More specifically, "to defeat summary

judgment[,] . . . the plaintiff's admissible evidence must show circumstances that would be

sufficient to permit a rational finder of fact to infer that the defendant's employment decision

was more likely than not based . . . on discrimination."  *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d

Cir. 2003) (quoting *Stern v. Trs. of Colum. Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).  At the third

step, "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that

the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis omitted).

Significantly, unlike a plaintiff pursuing a Title VII employment discrimination claim, "a plaintiff pursuing a claim for employment discrimination under § 1983 . . . must establish that the defendant's discriminatory intent was a *'but-for'* cause of the adverse employment action or the hostile environment." *Naumovski v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019) (emphasis added). Accordingly, a court considering a Section 1983 race discrimination claim on summary judgment "must determine whether, construing the evidence in a light most favorable to the plaintiff, a reasonable jury could find that the adverse employment action would not have occurred *'but-for'* [race] discrimination." *Id.*; *accord Aiken v. MTA N.Y.C. Transit*, 18-CV-11756 (GBD) (DF), 2021 WL 6621579, at *16 (S.D.N.Y. Sept. 2, 2021), *report and recommendation adopted*, 2021 WL 4481094 (S.D.N.Y. Sept. 29, 2021). At the third step of the *McDonnell Douglas* analysis, therefore, the plaintiff must produce "not simply 'some' evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, *and* that more likely than not [discrimination] was the real reason'" for — and the but-for cause of — the challenged actions. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (emphasis added).

Applying these standards here, the Court concludes that Bellis has not adduced sufficient evidence to show an underlying violation of his constitutional rights. The Court assumes without deciding that Bellis can establish a *prima facie* case of race discrimination with respect to his rejection for the positions in DML and the BAID position.[4] But the DOE has plainly satisfied its

---

[4]     To the extent that Bellis brings a claim with respect to his rejection for a position in EduStat, *see* Pls.' Opp'n 24-25; *see also* Compl. ¶¶ 75-77; Bellis Decl. ¶¶ 78-80, he fails to establish a *prima facie* case of race discrimination. The only cognizable evidence in the record is

burden of articulating a "legitimate, nondiscriminatory" reason for Bellis's rejection. *McDonnell Douglas*, 411 U.S. at 802. As to the DML positions, Sanchez-Medina explained why she concluded that Garcia and Hoff were more qualified than Bellis. *See* Def.'s Mem. 9; DOE's 56.1 Statement ¶¶ 47-48, 50, 52; *see also* Sanchez-Medina Depo. at 77-78, 82-88, 91-94. Further, it is undisputed that Sanchez-Medina did not have a desire to have the DML reflect the diversity of the City and that no one had spoken to her about having an "inclusive recruitment and hiring policy" in the DML. *See* DOE's 56.1 Statement ¶¶ 41-42. And as to the BAID position, all ten applicants were ranked, and the position was awarded to the highest ranked; Bellis, by contrast, ranked second-to-last. *See* Def.'s Mem. 9; *see also* ECF Nos. 67-11, 67-12, 67-13. To withstand summary judgment, therefore, Bellis must point to evidence from which a rational factfinder could infer that these reasons were false and that the real reason for the DOE's decisions was discrimination. *See St. Mary's Honor Ctr.*, 509 U.S. at 515.

Bellis fails to carry that burden. As discussed above, his conclusory contention that Sanchez-Medina's testimony was unreliable and self-serving is not enough. *See Maher*, 2011 WL 7025807, at *5 n.6. Nor are his subjective, vague, and self-serving assertions that he was more qualified than those the DOE hired. *See* Bellis Decl. ¶¶ 46, 66; *see also, e.g.*, *Mason Tenders Dist. Council Welfare Fund*, 400 F. Supp. 3d at 15; *see also, e.g.*, *Yu v. N.Y.S. Unified Ct. Sys. Off. of Ct. Admin.*, No. 11-CV-3226 (JMF), 2013 WL 3490780, at *5 (S.D.N.Y. July 12,

---

that Bellis interviewed for a position in EduStat but did not get it. *See* Bellis Depo. 146, 150. In his declaration, Bellis asserts that the position went to an African-American man named Shannon Smith, *see* Bellis Decl. ¶ 80, but it is plain that he has no non-hearsay basis for that information. *See, e.g.*, Compl. ¶ 77 ("Bellis . . . learned that the position ultimately went to a person of color . . . ."). Moreover, the record is altogether silent as to the selection process for the EduStat role, the decisionmakers involved in that selection process, the circumstances surrounding Bellis's application to and consideration for the role, and Smith's qualifications. That is plainly not enough even to make out a *prima facie* case of discrimination at this stage of the litigation.

2013).  In fact, even if Bellis's subjective view of his own qualifications relative to the other candidates were cognizable (and accurate), that would not be enough to carry his burden at the third step of the *McDonnell Douglas* framework.  "In the failure to hire context, . . . to raise an inference of discrimination based upon comparative qualifications for a position, the plaintiff's credentials must be *so superior* to the credentials of the person selected for the job that *no reasonable person*, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."  *White v. Huntington*, No. 14-CV-7370 (ST), 2021 WL 826221, at *7 (E.D.N.Y. Mar. 4, 2021) (cleaned up) (emphasis added).  Bellis's views of his own merit aside, there is no evidence in the record that would support that finding.[5]

Bellis's other arguments do not withstand scrutiny either.  First, perhaps recognizing the lack of evidence supporting an inference of discrimination with respect to Sanchez-Medina's hiring decisions, Bellis tries to cast doubt on the DOE's assertion — which is backed by deposition testimony — that she was in fact the one responsible for making staffing decisions within the DML.  *See* ECF No. 78 ("Pl.'s Opp'n"), at 21-23; Pl.'s 56.1 Response ¶ 40.  But he offers no actual evidence to the contrary — only speculation and argument.  Second, he argues that, in being reassigned to Queens, he was treated differently than other non-white DELLSS alums who were rejected for positions in the DML.  *See* Pl.'s Opp'n 22.  But he provides nothing to corroborate his conclusory testimony that they (unlike he) received "comparable roles," Pl.'s

---

[5]     In arguing that Sanchez-Medina's testimony does not justify summary judgment, Bellis relies heavily on *O'Reilly v. Marina Dodge, Inc.*, 435 F. App'x 8 (2d Cir. 2011) (summary order), *see* Pl.'s Opp'n 21, in which the Second Circuit observed that the defendant had "presented no contemporaneous evidence that [the plaintiff's] job performance was lacking" and that there was "abundant evidence of [the plaintiff's] good work performance," 435 F. App'x at 10-11.  But *O'Reilly* was a discharge case, not a failure-to-hire case, so the plaintiff's burden was not to show that his credentials were so superior to those of the person selected for the job that no reasonable person could have chosen the other candidate over him.

56.1 Response ¶ 57, and nothing to show that these other employees were otherwise "similarly situated in all material respects," *Myers v. Doherty*, No. 21-3012-CV, 2022 WL 4477050, at *2 (2d Cir. Sept. 27, 2022) (summary order) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).  Finally, he points to two statements made to him by other DOE employees: one, by Matt Miller in the "assessment office," to the effect that he might not get the BAID position because "they're really looking for somebody of color," Bellis Depo. 149; and a second, by "another" (unnamed) "staff member" who told him (at an unspecified time) that "there was a black cloud hanging over his head," *id.* at 154.  *See* Pl.'s Opp'n 24.  At best, however, these statements would be admissible only to prove the state of mind of the speakers.[6] And what Miller and the unnamed other "staff member" subjectively believed is not relevant to any issue in dispute, let alone enough to rebut the DOE's proffered reasons.

In the final analysis, Bellis points to no evidence — as opposed to "conclusory allegations or unsubstantiated speculation" — that the DOE's proffered reasons were pretextual, let alone pretexts for race discrimination.  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (internal quotations marks omitted); *see St. Mary's Honor Ctr.*, 509 U.S. at 515.  None of the documents or emails concerning the decisions reflect that they turned on his race.  *See, e.g.*, ECF Nos. 76-12, 76-13, 76-14.  And two of the three people who were hired instead of Bellis

---

[6]     Bellis wisely does not even try to argue that these statements are admissible for their truth, as there is no reason to believe they were made by the speakers "within the scope of" their duties as DOE employees (and some reasons to believe that they were not).  Fed. R. Evid. 801(d)(2)(D).  Instead, Bellis cites *Stern v. Trustees of Columbia University*, 131 F.3d 305 (2d Cir. 1997), in which the Second Circuit held that a statement by an employee of the defendant university that the department at issue "needed more Hispanic members" was "not hearsay" because it was relevant to the university's intent.  *Id.* at 311-13; *see* Pl.'s Opp'n 24.  But the speaker in that case was a member of the "search committee" — that is, one of the decisionmakers.  *See Stern*, 131 F.3d at 311.  By contrast, there is no evidence that Miller (let alone the unnamed other DOE staff member) played any role whatsoever in the employment decisions at issue here.

(Hoff and Dalla Betta) were themselves white.  *See, e.g.*, *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 381 (S.D.N.Y. 2013) ("The fact that Plaintiff was replaced by a member of the same protected class further undermines any inference of discriminatory intent."); *Johnson v. N.Y.C. Health & Hospitals Corp.*, No. 21-CV-25 (BMC), 2022 WL 2239439, at *6 (E.D.N.Y. June 22, 2022) ("It is 'extremely difficult, if not practically impossible' to establish discrimination where a plaintiff was passed over so an employer can hire another member of the plaintiff's same protected class.").  In short, "[o]ther than plaintiffs' own conjecture and speculation, there is no evidence that the actions of the [] defendants were motivated by race."  *Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 110 (W.D.N.Y. 2002).  It follows that Bellis has failed to prove an underlying constitutional violation and, on that basis alone, the DOE is entitled to summary judgment.  *See, e.g.*, *Harry v. City of New York*, No. 23-69-CV, 2024 WL 260968, at *3 (2d Cir. Jan. 24, 2024) (summary order) (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)).

**B.  Nexus to an Official Policy or Custom**

In any event, Bellis's claim fails for an independent reason: Even if he could show an underlying constitutional violation, there is insufficient evidence for a jury to find that any policy or custom of the DOE was its "cause[]."  *Connick*, 563 U.S. at 60.  Citing comments and actions by de Blasio, Carranza, and other high-level City officials, the parties spill much ink on the question of whether there was an official policy or custom (at the City or DOE level) of making employment decisions on the basis of race.  *Compare* Pl.'s Opp'n 1-2, 7-10, 12-15, *with* Def.'s Mem. 10-14.  On a similar record, Judge Vyskocil recently held that the evidence "permit[ted] 'a reasonable inference' that Carranza and his DOE implemented a policy of demoting and side-lining white staffers . . . in order to change the racial composition of the leadership."  *Herrera v.*

*N.Y.C. Dep't of Educ.*, No. 21-CV-7555 (MKV), 2024 WL 245960, at *8 (S.D.N.Y. Jan. 23, 2024); *see also id.* at *13-14 (concluding that "whether de Blasio and Carranza set a policy at the DOE of using race as a determinative factor in hiring" was a disputed factual issue).[7]  But the Court need not and does not decide whether the evidence supports that same conclusion here. That is because, assuming without deciding that there was an official policy or custom of making employment decisions at the DOE on the basis of race, Bellis fails to establish "a direct causal link between" that official policy or custom and any constitutional harm that *he* suffered.  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

The missing link is any connection between the purported policy pushed by de Blasio and Carranza, on the one hand, and the failure to hire Bellis for any of the positions at issue, on the other.  De Blasio and Carranza were not involved in the decisions with respect to Bellis.  Instead, as noted above, Sanchez-Medina was the person who rejected Bellis for the positions in the DML, *see* DOE's 56.1 Statement ¶¶ 40, 47, 52, while multiple people were involved in producing the ratings that put him second-to-last among the candidates for the BAID position, *see id.* ¶¶ 59-62.  And there is no evidence in the record indicating that any of these decisionmakers were independently motivated by race or that they were acting to carry out orders or expectations from de Blasio and Carranza.  In fact, in Sanchez-Medina's case, it is an undisputed fact that she "did not have any desire to have DML reflect the diversity of the City" and that "[n]o one spoke [to her] about having an inclusive recruitment and hiring policy in the DML."  *Id.* ¶¶ 41-42.  Therefore, assuming without deciding that de Blasio and Carranza had a

---

[7]       "Much of the evidence" relating to the existence of a DOE policy (or lack thereof) in this case "was obtained in" *Herrera* (where the plaintiffs are represented by the same counsel as Bellis is here).  Pl.'s Opp'n 7 n.2.  That said, the record in this case is not identical, as Judge Vyskocil did not address the DOE's argument that the plaintiffs there, like Bellis here, failed to comply with the requirements of Local Civil Rule 56.1.

policy of considering race in hiring at the DOE, there is no evidence from which a factfinder could infer that the employees who made the relevant decisions here were "acting pursuant to" that policy, as Bellis must show to prevail on his claim.  *Hurdle v. Bd. of Educ. of City of N.Y.*, 113 F. App'x 423, 424-25 (2d Cir. 2004).

On that score, the contrast with *Herrera* is illuminating.  Significantly, Judge Vyskocil did not find there that de Blasio and Carranza had implemented a policy of race-based hiring *throughout* the DOE.  Instead, the plaintiffs argued, and she found, that the record was sufficient for a jury to infer that they had a policy or practice of considering race in hiring for "high-level" or "senior leadership" positions at the DOE.  *See* 2024 WL 245960, at *1-2, 8, 13-14.  The plaintiffs there fell into that narrow category of employees: one had been Chief Executive Officer of the Office of Safety and Youth Development, a position with oversight of 250 employees and "a long list of major responsibilities"; the second had been Executive Director of the Office of Counseling Support Programs, in which role she had developed and overseen "two signature programs of the de Blasio administration's DOE"; and the third had been Senior Supervising Superintendent, a "cabinet-level position" with supervisory responsibility over "all 46 DOE superintendents and their teams."  *Id.* at *3-5.  Moreover, Carranza himself was the relevant decisionmaker for one of the three plaintiffs.  *See id.* at *6-7.  And while Carranza did not have a direct role with respect to the other two plaintiffs, there was evidence in the record from which the jury could find that the decisionmaker (who had been promoted by Carranza) had acted pursuant to the race-based policy set by de Blasio and Carranza — namely, the fact that the

decisionmaker had "allegedly made a disparaging comment about 'Whiteness' during a training session." *Id.* at *12; *see id.* at *14.  That link is what is missing here.[8]

In sum, here — unlike in *Herrera* — there is *no* "evidence in the record to permit the inference that de Blasio and Carranza, as final policymakers, were the moving force behind" the decisions not to hire Bellis for the various roles to which he applied.  *Id.* at *14.  For this additional reason, the DOE is entitled to summary judgment and Bellis's *Monell* claim must be and is dismissed.  *See Cash*, 654 F.3d at 333.

## CONCLUSION

For the foregoing reasons, the Court concludes that the cognizable evidence in the record is insufficient to prove either that Bellis himself was discriminated against on the basis of race or that any such discrimination was attributable to the City itself.  Accordingly, the DOE's motion for summary judgment must be and is GRANTED.  The Clerk of Court is directed to terminate ECF No. 66, enter judgment in favor of the DOE, and close the case.

SO ORDERED.

Dated: March 19, 2024
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[8]    In *Herrera*, Judge Vyskocil also found that there was sufficient evidence for a jury to find an underlying constitutional violation.  *See id.* at *9-13.  On that score, this case is also distinguishable — indeed, it is distinguishable for several reasons.  First, *Herrera* was a demotion case, not a failure-to-hire case.  *See id.* at *9-10.  Thus, the plaintiffs did not have to show that their credentials were so superior to those selected for their jobs that no reasonable person could have chosen the others over them; instead, it was enough for them to show that "they were not demoted because of poor performance."  *Id.* at *11.  Second, unlike Bellis, the plaintiffs there were "all replaced with individuals of a different race" and there was "*some* evidence" — apart from the plaintiffs' conclusory assertions — "that Plaintiffs' replacements were less qualified."  *Id.* at *11-12.  Third, the plaintiffs there "offer[ed] evidence that the DOE and Carranza did not hold open, competitive hiring processes to replace them."  *Id.* at *12.  And finally, as noted above, there was evidence in *Herrera*, completely lacking here, that the relevant decisionmakers had made "'invidious comments' about" race.  *Id.* at *12.